**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **TIMOTHY B STOKES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **Case No.: 3:11-cv-00187-DRH-PMF** |
| | ) | |
| **LISA J W HOLLINGSWORTH,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Philip M. Frazier from Chief United States District Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation.

Before the Court is petitioner Timothy B. Stokes's petition for a writ of habeas corpus (Doc. 1). Respondent Lisa J W Hollingsworth has filed a response (Doc. 6) to the writ, and the petitioner has filed a reply (Doc. 9) to that response. For the following reasons, it is **RECOMMENDED** that the petitioner's writ of habeas corpus (Doc. 1) be **DENIED**.

## I.     BACKGROUND

The petitioner, Timothy B. Stokes, is presently incarcerated at the United States Penitentiary in Marion, Illinois ("USP Marion"). Stokes was sentenced to a fifteen year, three month term of imprisonment and eight years of supervised release on July 8, 1999. *See* Doc. 6-1 at 2. Stokes has a projected release date of July 20, 2012. *Id*. at 1.

Sometime before August 4, 2010, Stokes was granted placement of six months in a halfway house during his final six months of his sentence (January 20, 2012 – July 20, 2012). On August 4, 2010, Stokes wrote his case manager, Ms. Behle, at USP Marion asking for an

1

explanation as to why he was only granted six months placement in the halfway house, rather than the twelve months that a federal law called the Second Chance Act encourages and permits. Doc. 1-1 at 1. Under Title 18, United States Code, Section 3624, Subsection (c), ("the Second Chance Act") the United States Bureau of Prisons ("BOP") is mandated "to the extent practicable" to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c). A community correctional facility (i.e. halfway house) is one example of such a condition. *See id*. On August 4, 2010, Ms. Behle responded to Stoke's request for an explanation by stating that more than six months placement in the halfway house was not recommended because Stokes "would be better off working on [his General Education Development ("GED")] and involving [himself] in release preparation programming at the institution." Doc. 1-1 at 1. Ms. Behle also noted that if Stokes was unable to adequately prepare for his release during the six months of halfway house placement, his probation officer could assist in additional halfway house placement of an additional four months past his projected release date. *Id*.

On August 19, 2010, Stokes sought an administrative remedy by making a formal request to the Unit Manager at USP Marion, Mr. Kelly. *See* Doc. 1-1 at 2-3. In the formal request, Stokes emphasized the reasons why he needed additional halfway house placement. *Id*. Due to his lengthy incarceration, Stokes stated that he needed additional halfway house placement to secure housing and gainful employment. *Id*. Additionally, Stokes deemphasized the importance of continuing his GED. *Id*. Stokes stated he believed additional times towards his GED would be futile because he had been attempting to get his GED for ten years with little success. *Id*.

Although he could now read and write, Stokes stated that he believed that he had been foreclosed from taking the GED by the staff at USP Marion because of his learning disability. *Id*. Stokes' formal request was denied on August 25, 2010. *Id*.

On September 1, 2010, Stokes appealed the denial of his formal request to the USP Marion Warden. *Id*. at 4-5. The Warden denied the appeal on September 16, 2010 in a written decision. *Id*. at 6. On October 1, 2010, Stokes appealed the Warden's decision by filing a Regional Administrative Remedy Appeal to the BOP North Central Regional Office. *Id*. at 7. Regional Director Michael K. Nalley denied the appeal on November 5, 2010. *Id*. at 9. Stokes believed it was unnecessary to complete the final stage of the administrative remedial process and, consequently, did not file an appeal with the Central Office in Washington, D.C. *See* Doc. 1 at 4.

On March 11, 2011, the petitioner filed the instant writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 and requesting relief concerning the execution of his sentence. In its memorandum and order dated October 12, 2011, the Court found that the petitioner was "seeking what can fairly be described as a quantum change in the level of custody," (Doc. 3 at 3 (quoting *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)), and is "challenging the execution of his sentence; therefore, he has properly brought his claims under the umbrella of 28 U.S.C. § 2241" (*id*. (citing *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998)).

## II.   DISCUSSION

Stokes claims that he is entitled more than the six months of halfway house placement pursuant to the Second Chance Act. The respondent sets forth two arguments why the habeas corpus petition should be denied: 1) Stokes did not exhaust his administrative remedies; and 2)

Stokes is not entitled to twelve months placement in a halfway house. The Court will now discuss each of these arguments.

### A. Exhaustion of Administrative Remedies

The respondent argues that this case should be dismissed because Stokes has not attempted to fully exhaust his administrative remedies. A prisoner bringing a 28 U.S.C. § 2241 habeas corpus petition challenging the execution of his sentence must exhaust his administrative remedies before the District Court can consider the merits the petition. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The common law rule requiring exhaustion of administrative remedies accomplishes two important policy objectives: 1) exhaustion protects the authority of the administrative agency by giving it an "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures," and 2) "exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

In order for Stokes to properly exhaust his administrative remedies, he was required to comply with the rules put in place by the BOP. The parties do not dispute that the initial stages of exhaustion were properly completed pursuant to the BOP rules. There is also no dispute that Stokes did not complete the final step of administrative review; a final appeal to the Central Office in Washington, D.C. Rather, the parties dispute whether the appeal to the Central Office in Washington, D.C. is required in order for Stokes to exhaust his administrative remedies prior to filing this habeas corpus petition with the Court.

Stokes argues that he substantially complied with the administrative remedial process and simply did not have enough time to comply with the last step. Stokes relies on *McCarthy v. Madigan*, 503 U.S. 140 (1992), for his assertion that when exhaustion is not statutorily mandated, sound judicial discretion governs.[1] *McCarthy*, 503 U.S. at 144. Following the principle in *McCarthy*, the Seventh Circuit has held that exhaustion may be excused when: "(1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citing *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002). Here, Stokes takes the position the Court should excuse the exhaustion requirement because he substantially complied and completing the final step would have caused him irreparable harm due to time constraints. Essentially, Stokes asks the Court to consider applying the unreasonable delay/indefinite timeframe for administrative action exception to the exhaustion requirement.

The time constraints identified by Stokes were not so severe to warrant excuse of a final appeal to the Central Office in Washington, D.C. Stokes was eligible for halfway house placement in July of 2011. His appeal to the North Central Regional Office was denied on

---

[1] It should be noted that *McCarthy v. Madigan*, 503 U.S. 140 (1992), has been "superseded by statute to the extent it held that federal prisoners seeking monetary damages in a *Bivens* action are not required under 42 U.S.C. § 1997e to exhaust administrative remedies provided by the Bureau of Prisons." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 n.5 (7th Cir. 2004) (citations omitted). However, the principle that "when exhaustion is not statutorily mandated, 'sound judicial discretion governs,' … remains good law, as does its further admonitions on how that discretion should be utilized." *Id*. (citations omitted).

November 5, 2010. Doc. 1-1 at 9. This gave Stokes a more than eight months in which to resolve the final step of the administrative process. If Stokes would have attempted to file the final appeal, the Central Office would have been required to provide a decision within forty days. *See* 28 C.F.R. § 542.18. This would have left Stokes with ample time to file this petition before he ultimately decided to do so on March 11, 2011. Doc. 1. In short, Stokes made the decision to file this petition instead of completing exhaustion according to the BOP's rules. This decision should ultimately prove to be fatal to his petition for a writ of habeas corpus. Due to the failure to exhaust administrative remedies, it is recommended that the petitioner's writ of habeas corpus (Doc. 1) be denied.

### B. The Second Chance Act

It should be noted that even if Stokes had exhausted his administrative remedies, his petition for a writ of habeas corpus would likely be denied on the merits. The statutory language of the Second Chance Act is permissive rather than mandatory. *See* 18 U.S.C. § 3624(c)(1) ("The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."). Twelve months is the maximum amount of time. *See id*. Here, Stokes was granted six months placement. By statute, the placement decision is within the discretion of the BOP. *See id*; *see also, e.g., Rieser v. Sherrod,* Case No. 10-541, 3 (S.D.Ill., Jan 5, 2011) ("The statute also makes placement in a community correctional facility permissive, not mandatory. Petitioner has no absolute right to placement in "conditions that will facilitate his reentry into society" for longer than the 6 months determined by the Director of the Bureau of Prisons."). The Court should not disturb the decision absent a

finding that the BOP abused that discretion. *See, e.g., Feazell v. Sherrod*, Case No. 10-901, 2010 WL 5174355, 3 (S.D.Ill., 2010) (providing that the BOP decision is "entitled to deference so long as it is not arbitrary, lacking any rational basis, or otherwise contrary to the requirements of the statute" and citing. *Pence v. Holinka*, Case No. 09-489, 2009 WL 3241874, 3 (W.D.Wis., 2009)).

Stokes argues that the BOP abused its discretion in granting only six months halfway house placement because the BOP erred in considering the relevant Second Chance Act factors for determining length of placement. 18 U.S.C. § 3624(c)(6) provides that the BOP shall ensure that placement in a halfway house is conduction in manner consistent with 18 U.S.C. § 3621(b). Section 3621(b) provides that in determining the place of the prisoner's imprisonment, the BOP must consider: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence … ; and (5) any pertinent policy statement issued by the Sentencing Commission… 18 U.S.C. § 3621(b). Initially, Stokes argued that the BOP did not consider any of the factors. *See* Doc. 1 at 8-9 (citing *Carmichael v. Holinka*, Case No. 09-388, 2009 WL 2512029 (W.D.Wis., August 17, 2009) (finding an abuse of discretion by the BOP when it did not consider all of the five factors in 18 U.S.C. § 3621)). After the respondent pointed out that the BOP was primarily concerned about the third factor (the history and characteristics of the prisoner), Stokes modified his position by arguing that, assuming the BOP actually considered and relied on the third factor, it abused its discretion by not considering each factor equally. *See* Doc. 9 at 4-5.

The BOP properly considered each of the five factors of 18 U.S.C. § 3621(b) in good faith. The evidence in the record indicates respondent considered each of the five statutory

factors. *See* Doc. 1-1 at 6 (Respondent's written response to Stokes' request for administrative remedy dated September 16, 2010). However, Stokes maintains that the BOP must consider each factor equally and cites to a Ninth Circuit case, *Rodriguez v. Smith*, 541 F.3d 1180 (9th Cir. 2008), for support. The *Rodriguez* Court found only that the BOP regulations, as previously enacted, violated the Second Chance Act's clear instruction that all placement and transfer determinations take into consideration each of five enumerated factors in 18 U.S.C. § 3621(b). *See Rodriguez*, 541 F.3d at 1186-87. Stokes' argument that each factor must be given equal consideration mischaracterizes the holding of *Rodriguez.*[2] Here, the BOP considered each factor in good faith. *See* Doc. 1-1 at 6. There is no restriction on providing more weight to one of the factors so long as all factors are considered. *See, e.g., Carmichael*, Case No. 09-388, 2009 WL 2512029 at 2 ("The history and characteristics of the prison may be the most important factor to consider in most cases, but the bureau must consider each relevant factor in good faith. *Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008); *Levine v. Apker*, 455 F.3d 71, 85 (2d Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 247 (3d Cir. 2005).").

## III.    RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petitioner's writ of habeas corpus (Doc. 1) be **DENIED**.

**SO RECOMMENDED.**

**DATED: <u>December 19, 2011.</u>**

*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE

---

[2] Stokes goes so far as to provide a quotation from *Rodriguez* that is not actually present in the decision. *See* Doc. 9 at 4 ("The BOP must consider each factor equally."). In Stokes' petition, Stokes attempts a similar mischaracterization of the holding of *Levine v. Apker*, 455 F.3d 71, 85 (2d Cir. 2006). *See* Doc. 1 at 9.